# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 9, 1998

## RONALD L. DAVIS V. DONAL CAMPBELL

### Appeal from the Chancery Court for Davidson County
### No. 97-1911-I     Irvin H. Kilcrease, Jr., Chancellor

---

### No. M1997-00234-COA-R3-CV - Filed February 5, 2001

---

This appeal involves a dispute between a prisoner serving a 99-year sentence and the Department of Correction regarding the calculation of the prisoner's release eligibility date. After the Department declined to issue a declaratory order changing his release eligibility date, the prisoner filed an action in the Chancery Court for Davidson County asserting that the Department had incorrectly classified him as a Class X felon because he had not been convicted of a Class X crime, and he had not received credit for jail time served prior to his prison sentence. The Commissioner of Correction moved to dismiss the complaint, and the trial court, after converting the Commissioner's motion to a motion for summary judgment, dismissed the prisoner's complaint. On this appeal, the prisoner essentially reargues the same issues raised in his complaint. We have determined that the trial court correctly concluded that the material facts are not in dispute and that the Commissioner is entitled to a judgment as a matter of law. Accordingly, we affirm the summary judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined.

Ronald L. Davis, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Patricia A. Kussmann, Assistant Attorney General, for the appellee, Donal Campbell.

### OPINION

Late one evening in May 1982, Ronald Davis and Tommy Lee King robbed the owner and patrons of the Third Street Inn in Columbia. They ordered the owner and the patrons to lie on the floor, and then Mr. King cold-bloodedly shot and killed the tavern owner. Mr. Davis and Mr. King escaped in the slain man's car but were later apprehended and prosecuted. Mr. King was convicted of first degree murder and was sentenced to death. In November 1982, a Maury County jury convicted Mr. Davis of aiding and abetting murder in the second degree, and he was sentenced to

serve ninety-nine years. Mr. Davis's conviction was later upheld on direct appeal[1] and in two post-conviction proceedings[2] and one habeas corpus proceeding.[3] When this lawsuit began, Mr. Davis was incarcerated in the West Tennessee High Security Facility in Henning, Tennessee.

Over the years, Mr. Davis has filed numerous meritless lawsuits on his own behalf and on behalf of other prisoners.[4] In April 1997, Mr. Davis asked the Department of Correction for a declaratory order seeking a change in his release eligibility date because his sentence was not being considered in light of the law in effect when he committed his crime and because he had not received credit for time he spent in jail awaiting his trial.[5] After the Department declined to give him his requested declaratory order, Mr. Davis filed suit against the Commissioner of Correction in the Chancery Court for Davidson County seeking a declaratory judgment in accordance with Tenn. Code Ann. § 4-5-225 (1998), raising the same issues he had raised in his request for a declaratory order.

The Commissioner countered with a motion to dismiss supported by an affidavit of one of the Department's sentence technicians setting out the details of Mr. Davis's sentence calculations, including the records of his sentence reduction credits.[6] The trial court treated the Commissioner's

---

[1] *Davis v. State*, No. 83-22-III (Tenn. Crim. App. Sept. 11, 1984), *perm. app. denied concurring in results only* (Tenn. Jan. 7, 1985).

[2] *Davis v. State*, No. 85-251-III, 1986 WL 5469 (Tenn. Crim. App. May 13, 1986) (No Tenn. R. App. P. 11 application filed) (affirming denial of the first petition for post-conviction relief); *Davis v. State*, No. 89-77-III, 1989 WL 71039 (Tenn. Crim. App. June 29, 1989), *perm. app. denied* (Tenn. Sept. 25, 1989) (affirming denial of the second petition for post-conviction relief).

[3] *Davis v. Morgan*, No. M1999-00965-CCA-R3-PC, 1999 WL 1073702 (Tenn. Crim. App. Nov. 29, 1999), *perm. app. denied* (Tenn. May 15, 2000).

[4] *See, e.g., Davis v. Bell*, No. 01A01-9212-CV-00500, 1993 WL 177145 (Tenn. Ct. App. May 26, 1993) (No Tenn. R. App. P. 11 application filed) (challenging unhealthful practices of the Department's employees); *Davis v. Weatherford*, No. 01A01-9903-CV-00159, 1999 WL 969648 (Tenn. Ct. App. Oct. 26, 1999), *perm. app. denied* (Tenn. Feb. 14, 2000) (civil rights claim regarding a conspiracy between the lawyers and judge at his trial); *Davis v. Holland*, 31 S.W.3d 574, 574 (Tenn. Ct. App. 2000) (stating that Mr. Davis works as "an inmate legal advisor" for prisoners at the West Tennessee High Security Facility)*; Davis v. Campbell*, No. M1999-02294-COA-R3-CV, 2000 WL 964777, at *1 (Tenn. Ct. App. July 13, 2000), *perm. app. dismissed* (Tenn. Dec. 11, 2000) (stating that Mr. Davis has filed "a host of prior lawsuits")*; Davis v. Tennessee Bd. of Paroles*, No. M2000-00668-COA-R3-CV, 2000 WL 987836, at *2 (Tenn Ct. App. July 19, 2000), *perm. app. denied* (Tenn. Jan. 8, 2001) (identifying ten other pro se lawsuits brought by Mr. Davis in 1997 and 1998).

[5] There is some dispute in the record concerning whether Mr. Davis spent 162 or 163 days in jail prior to his conviction. We have determined that 162 days is correct, although the one-day discrepancy does not effect the outcome of this case.

[6] For some unknown reason, the Commissioner did not assert a res judicata defense even though Mr. Davis had already initiated and lost a challenge to the calculation of his sentence reduction credits. *Davis v. Tennessee Dep't of Correction*, No. 01A01-9610-CH-00487, 1997 WL 71816 (Tenn. Ct. App. Feb. 21, 1997) (No Tenn. R. App. P. 11 application filed). Res judicata is a claim preclusion doctrine that bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues that were or could have been raised in the former suit. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn.1995); *Hampton v. Tennessee Truck Sales, Inc.*, 993 S.W.2d 643, 645 (Tenn. Ct. App.1999). Clearly, Mr. Davis could have raised the issues he is now raising in his
(continued...)

motion as a motion for summary judgment. On November 18, 1997, the trial court entered an order concluding that the Commissioner was entitled to a judgment as a matter of law because Mr. Davis had not demonstrated a triable issue of fact concerning the calculation of his release eligibility date. Mr. Davis, who is representing himself and proceeding as a poor person, has appealed.

## I.
### THE STANDARD OF REVIEW

We begin with the well-settled standards governing the appellate review of summary judgments. Summary judgments enjoy no presumption of correctness on appeal. *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). Accordingly, reviewing courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). Summary judgments are appropriate only when there are no genuine factual disputes with regard to the claim or defense embodied in the motion and when the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Courts reviewing summary judgments must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion -- that the moving party is entitled to a judgment as a matter of law. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26. A party may obtain a summary judgment by demonstrating that the nonmoving party will be unable to prove an essential element of its case, *Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993), because the inability to prove an essential element of a claim necessarily renders all other facts immaterial. *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

## II.
### THE TREATMENT OF MR. DAVIS'S CRIME AS A CLASS X FELONY

Mr. Davis first insists that the Department cannot deny him sentence credits on the ground that he was a Class X felon because the crime for which he was convicted was not a Class X crime in 1982. This presents a question of law because there are no material factual disputes regarding the details of Mr. Davis's conviction. He was convicted and sentenced in November 1982 of aiding and abetting murder in the second degree. All that remains to be decided is whether aiding and abetting murder in the second degree was a Class X crime in 1982.

---

[6](...continued)
earlier suit regarding the Department's calculation of his sentence reduction credits.

Tennessee's substantive criminal law has not always been codified in a comprehensive, internally consistent manner. Prior to their codification in 1989,[7] Tennessee's substantive criminal laws were contained in a fluid amalgamation of statutes rather than in a code. Neil P. Cohen, *The Need for Penal Code Revision in Tennessee*, 51 Tenn. L. Rev. 769, 772-73 (1984). For the decade that they were in existence, the statutes governing Class X felonies were part of this pastiche. The Class X Felonies Act of 1979, as originally proposed by Governor Lamar Alexander and enacted by the Tennessee General Assembly,[8] was designed to provide swift and certain punishment for the most serious violent crimes against persons. The Act required determinate sentences and speedier trials. It also denied bail pending appeal following conviction for a Class X crime and required that the sentence received for committing a Class X crime be served in a maximum security facility.

With particular reference to the issue presented in this appeal, the Class X Felonies Act provided that persons convicted of a Class X crime would be required to serve a defined percentage of the entire sentence they received "undiminished by sentence credits or good, honor or incentive time of any sort." Tenn. Code Ann. § 40-28-301(d) (1982) (repealed 1985). In 1985, the General Assembly relaxed this provision by permitting persons convicted of Class X crimes to earn sentence reduction credits.[9] Until the 1985 amendment to Tenn. Code Ann. § 40-28-301(d) took effect, prisoners convicted of a Class X crime were not able to earn or receive any sort of sentence reduction credit. After the effective date of the 1985 amendment, prisoners convicted as a Class X felony could begin earning sentence reduction credits if they signed the waiver required by Tenn. Code Ann. § 41-21-236(c)(3) (1997). *Henderson v. Lutche*, 938 S.W.2d 428, 429 (Tenn. Ct. App. 1996).

The Class X Felonies Act of 1979 expressly included the offense of second degree murder, except for vehicular homicide. Tenn. Code Ann. § 39-1-702(2) (1982) (repealed 1989). When Mr. Davis aided and abetted Mr. King in the felony murder of the proprietor of the Third Street Inn, Tenn. Code Ann. § 39-1-303 (1982) (repealed 1989) provided that aiders and abettors of a criminal offense would be subject to the same punishment as the principal offenders. *State v. Rodriguez*, 752 S.W.2d 108, 111 (Tenn. Crim. App. 1988). When we construe Tenn. Code Ann. § 39-1-702(2) in light of Tenn. Code Ann. § 39-1-303, it becomes obvious that in 1982, persons who aided and abetted murder in the second degree were subject to punishment as Class X felons. Consequently, at least for that portion of his incarceration, Mr. Davis was ineligible to receive or earn any sort of sentence reduction credits because of his status as a Class X felon. The trial court decided this point correctly.

### III.
### MR. DAVIS'S PRETRIAL JAIL CREDIT

Mr. Davis's second ground for requesting a declaratory judgment is also straightforward. He insists that the Department has not given him credit for the 162 days he spent in the Hamilton County Jail awaiting trial between June 3 and November 13, 1982. There is no question that he is

---

[7] Act of May 24, 1989, ch. 591, 1989 Tenn. Pub. Acts 1169.

[8] Act of May 14, 1979, ch. 318, 1979 Tenn. Pub. Acts 696.

[9] Act of Dec. 5, 1985, ch. 5, §§ 12 & 14, 1985 Tenn. Pub. Acts (1st Extraordinary Sess.) 22, 24-27.

entitled to credit for this time, Tenn. Code Ann. § 40-23-101(c) (1997); *Stubbs v. State*, 216 Tenn. 567, 575, 393 S.W.2d 150, 154 (1965), and the Department has asserted that it has credited this time against Mr. Davis's sentence. Thus, for the purpose of the summary judgment, the only question we must decide is whether Mr. Davis has demonstrated that there is a genuine factual dispute regarding whether he has already received credit for the 162 days.

A summary judgment is not appropriate when a case's determinative facts are in dispute. However, for a question of fact to exist, reasonable minds must be able to differ over whether some alleged occurrence or event did or did not happen. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Harrison v. Southern Ry. Co.*, 31 Tenn. App. 377, 387, 215 S.W.2d 31, 35 (1948). If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 655-56 (Tenn. Ct. App. 1993). If, on the other hand, the evidence and the inferences to be reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then there are no material factual disputes and the question can be disposed of as a matter of law. *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 90-91 (Tenn. 1999); *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn. Ct. App. 1999). Once the moving party demonstrates that it has satisfied these requirements, the nonmoving party must show how Tenn. R. Civ. P. 56's requirements have not been satisfied. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997).

Mere conclusory generalizations will not create a material factual dispute sufficient to prevent the trial court from granting a summary judgment. *Fariello v. Rodriguez*, 148 F.R.D. 670, 680 (E.D.N.Y. 1993); *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The nonmoving party must convince the trial court that there are sufficient factual disputes to warrant a trial. The nonmoving party may carry its burden by (1) pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n. 6; *DeVore v. Deloitte & Touche*, No. 01A01-9602-CH-00073, 1998 WL 68985, at *3 (Tenn. Ct. App. Feb. 20, 1998) (No Tenn. R. App. P. 11 application filed).

Mr. Davis attached to the petition he filed in this case copies of the verdict and sentence form and the judgment form from his November 1982 conviction in the Circuit Court for Maury County. Those documents direct "that said defendant [Mr. Davis] be given credit on his sentence for 163 days spent in Maury County Jail awaiting trial . . .." Thus, the verdict and judgment incontrovertibly show that the sentencing court credited Mr. Davis with the time he spent in jail awaiting trial and, therefore, started his sentence running on June 3, 1982. Consistent with the judgment, one of the affidavits submitted by the Commissioner to support the summary judgment motion states that Mr. Davis's release eligibility date has been computed using June 3, 1982 as the effective sentence date.

Thus, Mr. Davis's original release eligibility date was June 3, 2012.[10] Nothing in the record creates any plausible dispute about these facts. Based on the uncontradicted records submitted by Mr. Davis and the Commissioner, Mr. Davis has already received what he seeks. By using June 3, 1982 as the effective date of Mr. Davis's sentence, the Department has credited him with the 162 days he spent in jail prior to this conviction. That being the case, the trial court properly granted summary judgment on the jail time issue.

**IV.**

We affirm the summary judgment and remand the case to the trial court for whatever additional proceedings may be required. We tax the costs of this appeal to Ronald L. Davis for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[10]Mr. Davis's original release eligibility date has now been hastened by his post-incarceration earning of over eleven hundred program credits and behavior credits.