# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 6, 2002 On-Briefs

## THE NATIONAL MUTUAL INSURANCE COMPANY v. JO IVORY POLK

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 91569     The Honorable Rita L. Stotts, Judge**

---

### No. W2001-01555-COA-R3-CV - Filed July 9, 2002

---

This is a declaratory judgment action brought by an insurer seeking to void a property insurance policy for alleged misrepresentation in the application for the policy. The insured filed a counter claim seeking recovery under the policy. The trial court granted the insurance company's motion for summary judgment and declared the policy void *ab initio*. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jo Ivory Polk, Pro Se

James F. Kyle, Karen M. Campbell, Memphis, For Appellee, The National Mutual Insurance Company

### OPINION

The dispute in this case centers on an application for a renter's insurance policy. On April 17, 1997, Defendant/Appellant Jo Ivory Polk ("Ms. Polk" or "Insured") applied for insurance through The Financial Trust Insurance Agency will its agent, Willie Artison ("Mr. Artison"). Although Ms. Polk signed the application ("Application"), she left several sections unanswered, including a section entitled "Loss history." Mr. Artison, the agent who helped Ms. Polk complete the application, testified at trial that he later wrote the word "None" in the box entitled "Description of loss" in the "Loss history" section. Mr. Artison further testified that the underwriter, Coastal

Marketing ("Coastal"), later checked the "No" box after a question which read "any losses during the last 3 years?"[1]

In response to Coastal's request, Ms. Polk provided appraisals for $8,436.00 in jewelry and $627.00 in fine art. Plaintiff/Appellee National Mutual Insurance Company ("National Mutual") then issued policy number 462021-0 ("Policy"), effective from April 23, 1997 to April 23, 1998. National Mutual reviewed the Policy within the first sixty days. As part of this review, National Mutual requested and received a credit report on Ms. Polk. Because the credit check yielded a low score, National Mutual, acting within the terms of the policy, decided to cancel the policy. National Mutual sent a cancellation letter to Ms. Polk on June 17, 1997, explaining that the Policy would be cancelled effective July 2, 1997.

On June 30, 1997, two days before the cancellation date, Ms. Polk reported a theft loss of $33,300.00 which she said occurred on June 29, 1997. Ms. Polk claimed that a number of items were stolen from her home, including jewelry and eighteen oil paintings. At that time, National Mutual designated any loss exceeding $25,000.00 as a "large loss," and referred the claim to its Special Investigations Unit. At trial, John E. Nall, Director of the Special Investigations Unit, testified that he discovered a claim had been filed with Allstate Insurance Company ("Allstate") on Ms. Polk's behalf in April of 1995.

According to Judith Beaman, a former claims adjuster for Allstate, Lonnie Brown, Ms. Polk's former husband, reported a loss on January 31, 1995 involving the disappearance of jewelry.[2] National Mutual contends that Ms. Polk had a duty to report this loss on the Application. National Mutual insists that this omission is a material misrepresentation which voids the insurance policy.

Ms. Polk, on the other hand, alleges that she had no knowledge of the Allstate claim. Rather, she insists that she mentioned the disappearance of the jewelry to her husband during a telephone conversation, and that the loss actually occurred in September or October of 1993, while she and her husband were living apart. Although the record indicates that she was mailed replacement rings at some point in 1995[3], Ms. Polk claims to have had no knowledge that her husband had filed an insurance claim with Allstate on her behalf. Ms. Polk explains that she made no misrepresentation because the insurance agent or underwriter completed the Application and the information contained in the Application was truthful.

---

[1]The parties do not appear to dispute the fact that any information provided on the application regarding loss history was filled in by either Mr. Artison or Coastal.

[2]At the time the Allstate claim was filed, Ms. Polk was married to Lonnie Brown. Both she and her husband were insureds under an Allstate homeowner's policy.

[3]The parties dispute when Ms. Polk received the replacement rings.

National Mutual filed a complaint for declaratory judgment on November 11, 1997. Ms. Polk filed an amended answer and counterclaim on March 17, 1998. Although a jury heard testimony in the case, the trial court later dismissed the jury prior to completion of the trial.[4] After dismissing the jury, the trial court ultimately granted summary judgment in favor of National Mutual on March 30, 2001.

Ms. Polk, acting *pro se*, appeals, and presents the following issues for review: (1) Whether the required case or controversy existed between the parties at the time Insurer filed its Complaint for Declaratory Judgment; (2) Whether the Insurer is chargeable with, or legally responsible for, the responses upon which it relies as misrepresentations in the application for the subject insurance to avoid its obligations under the subject policy; (3) Whether Insurer can rely upon alleged misrepresentations in the application to avoid its obligations under the subject policy; (4) Whether the Insurer has breached the subject contract of insurance; (5) Whether Insurer's failure to pay Insured's claim constitutes bad faith; (6) Whether the trial court erred in excluding some of Insured's Requests for Admissions; (7) Whether the trial court erred in denying Insured's Motion in Limine; (8) Whether the trial court erred in granting summary judgment in favor of Insurer; (9) Whether Insurer's conduct in this case constitutes unfair and deceptive trade practices under applicable Tennessee statutes; and (10) Whether the issue of unfair and deceptive trade practices was tried by express or implied consent of the parties and should be treated in all respects as if it had been raised in the pleadings. For the following reasons, we hold that the trial court improperly granted National Mutual summary judgment in this case.

Because we hold that summary judgment was improper in this case, we will only address the issues of whether the required case or controversy existed between the parties, and whether the trial court properly granted summary judgment in favor of National Mutual.

We begin by addressing the threshold issue of whether the trial court had jurisdiction over Insurer's Complaint for Declaratory Judgment. The Tennessee Declaratory Judgment Act, T.C.A. § 29-14-101, *et seq.* provides, in relevant part:

### § 29-14-103. Construction of law; instruments

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

---

[4]This case presents a rather bizarre procedural posture which we feel has no particular bearing on this appeal.

T.C.A. § 29-14-103 (2000). An insurance policy is a contract, and the scope of a policy's coverage is an issue of law. *See, e.g., Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). Therefore, the validity of an insurance contract is the proper subject matter of a declaratory judgment action. *See id.*

Although the validity of the contract in question was properly before the trial court, we believe this case was not appropriate for summary judgment. A motion for summary judgment should be only be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.*

In this case, National Mutual relies upon T.C.A. § 56-7-103 (2000) for the proposition that its contract with Ms. Polk was void *ab initio* because she misrepresented her prior loss history in her insurance application. That statute provides:

### § 56-7-103. Misrepresentations

No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, *unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.*

*Id.* (emphasis added). Under this statute, an insurer may void a contract for insurance only where a misrepresentation is made: (1) with actual intent to deceive, or (2) where the misrepresentation increases the insurer's risk of loss. Under this "increase of risk of loss" situation, no actual intent to deceive is required, and determination of such an increase is a matter of law for the court to decide. *See, e.g., Lane v. Travelers Indem. Co.*, 499 S.W.2d 643, 647 (Tenn. Ct. App. 1973).

This Court has noted that, in order to avoid coverage based upon T.C.A. § 56-7-103, "the insurer must first prove a misrepresentation." *Reeves v. Granite State Ins. Co.*, No. 01A01-9807-CH-00379, 1999 WL 772637, at *9 (Tenn. Ct. App. 1999). An insurer must first prove that the insured had knowledge of the misrepresentation, or was under a duty to disclose information, but failed to do so. *See id.* As such, the determination of whether the insured made a misrepresentation is an issue of fact. *See id.*

-4-

> [F]or a question of fact to exist, reasonable minds must be able to differ over whether some alleged occurrence or event did or did not happen. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn.1995); *Harrison v. Southern Ry. Co.*, 31 Tenn.App. 377, 387, 215 S.W.2d 31, 35 (1948). If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 655-56 (Tenn.Ct.App.1993).

*Davis v. Campbell*, 48 S.W.3d 741, 747 (Tenn. Ct. App. 2001).

The determination of whether Ms. Polk made a misrepresentation on the Application is, arguably, a close question. However, taking all inferences in favor of Ms. Polk, we believe that reasonable minds could differ over whether she had a "loss" within three years of applying for renter's insurance with National Mutual.

Although the agent for Allstate testified that Ms. Polk had spoken with her regarding the filing of the claim, Ms. Polk testified that her husband filed the claim without her knowledge. The record also contains conflicting evidence regarding when the actual disappearance of the jewelry, or "loss," occurred. Ms. Polk claims the jewelry was lost prior to the three-year period, and yet the record indicates that Allstate paid a claim for the loss in 1995.[5] The check which Allstate issued to cover the loss in question does indicates that Ms. Polk was one of the insureds under the Allstate policy, but the check is payable to the jewelry store which replaced the lost items and not to Allstate's insureds. The resolution of these material issues of disputed fact is for a jury to decide.

For the foregoing reasons, we reverse the order of the trial court granting summary judgment in favor of Plaintiff/Appellee National Mutual. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the Plaintiff/Appellee, National Mutual Insurance Company.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

---

[5]In this regard, we note that the parties appear to treat the terms "claim" and "loss" differently, and that this confusion adds to the factual dispute surrounding any alleged misrepresentations Ms. Polk made on the Application.